How are you? I'm doing well. You may proceed. Good morning. May it please the Court, my name is Ben White. I'm with the law firm of Kiesel, Young & Logan, and I represent Defendant Appellant Salomon Smith Barney, who I will refer to simply as Smith Barney. The issue today is whether an ERISA plan participant who brings a claim on behalf of an ERISA plan is bound by the terms of an agreement which was executed by the trustees of the ERISA plan on behalf of the ERISA plan. There are two facts which aren't disputed and cannot be disputed. It is not disputed, and it can't be disputed, that Plaintiff Appellee Kevin Comer asserts this claim on behalf of the MICOR ERISA plan. The second undisputed fact is that the trustees executed the account agreements at issue with Smith Barney on behalf of the ERISA plan, not as individuals. The result of these undisputed facts is that the relationship between the plan and Smith Barney is governed by an arbitration agreement, and therefore Smith Barney should be entitled to compel the breach of fiduciary claim against it to arbitration. Your position is that you can't increase rights by having a third party bring the claim. I'm sorry? Correct. You can't get more rights by having a third party bring a claim that's owned by a second party. Correct. Exactly. The essential dispute here, I think, is centered around the fact that Mr. Comer did not sign the agreement. There's no dispute about that. He, of course, did not sign the agreement. But that doesn't mean that this issue shouldn't go to arbitration. The complaint language, if I might read the very first line, and that is, in this action under ERISA, plaintiff seeks to restore to the MICOR, Inc. Employee Pension Plan and the MICOR, Inc. Employee Profit Sharing Plan amounts that have been lost due to breaches of fiduciary duty by the plan's fiduciaries in investing the plan's assets. And there's clear and binding U.S. Supreme Court and Ninth Circuit precedent that, in fact, Mr. Comer is obligated to bring it on behalf of the participants. Isn't the difficulty there? I'm sorry? He cannot bring it on his own behalf. That's clear from the Massachusetts Mutual v. Russell United States Supreme Court case, as well as Sinelli-inclined Ninth Circuit cases. He cannot bring it. Isn't there a problem, though, that if ERISA makes Smith Barney a fiduciary, the question is, can the fiduciary get out from under this lawsuit by demanding an arbitration clause when he becomes a fiduciary? Now, I guess a plan can provide for arbitration itself vis-à-vis the beneficiaries, and that's enforceable, at least temporarily enforceable. It may not be final arbitration, but can at least require arbitration. But isn't the problem whether Smith Barney can impose arbitration vis-à-vis the beneficiaries when it becomes a fiduciary  Well, two points. The mere fact that it's going to arbitration does not mean that it is bypassing a claim. There's a strong federal public policy that you are all well aware of, that arbitration between private parties should be enforced. So the claim still exists, it just must be resolved in arbitration. Well, at least in part. The other point is that it's not a circumvention of ERISA if the trustees of the plan determine that it's in the plan's interest to enter into a third party, an agreement with a third party on behalf of the plan and that third party, and govern disputes based on an arbitration agreement. Now, this being an investment question, I take it that the beneficiaries can, and I guess they did, sue the trustees directly for violating their investment obligations, which is something that's non-delegable under ERISA if I understand correctly. So they can sue them directly, and I presume they have sued them directly. And the named fiduciaries can't get arbitration as to the bad investment advice, if that's what it is, vis-à-vis the beneficiaries, right? That's correct. So the question is, can Solomon do it anyway by reason of this contract, right? And the answer is yes. In Moses H. Cohn, the Supreme Court specifically stated that the FAA requires piecemeal resolution of litigation if two parties are bound by an arbitration agreement. So the claim that exists as to parties who are not subject to the arbitration agreement would go forth in court and it could be stayed pending the resolution of the arbitration or it could go forward on a parallel track. But I think the named fiduciaries could cross-complain, if you will, against Solomon because of the bad advice they got that caused them to be sued, and in that cross-complaint, you would at least be entitled to arbitration between yourself and the named fiduciaries. Yes, in their capacity as trustees, of course. Now, and this result was reached, as you know, from the briefing in the Bevere v. Oppenheimer case, and that case is, of course, not binding. But the reasoning is clear. The trustees acted on – in that case, it was just one trustee who was an administrator. He acted on behalf of the plan and the court agreed with the contention that he had the authority to bind the plan participants. Well, why did you have to go to the Second Circuit and, indeed, a district court in New Jersey rather than finding something right here in the Ninth Circuit? I wish we had something in the Ninth Circuit and hopefully this will be it. Exactly. This is an issue of first impression, this specific issue. I mean, there's plenty of Ninth Circuit precedent about arbitration and the fact that non-signatories can be bound by contract and agency law. And that – And that's not sufficient? That's not sufficient. Oh, it's just not a direct application in this particular instance because Mr. Comer is arguing that the trustees weren't his agent. Well, that's not dispositive. The point is the trustees were empowered to act on behalf of the Michael Orrisa Trust, not Mr. Comer, but on behalf of the Orrisa Trust. And because Mr. Comer is acting on behalf of the Orrisa Trust in this action, he is bound by that agreement. Mr. Comer also relies – In trust law in general, if I recall correctly, the trustee cannot get rid of his obligations by getting investment advisors. The trustee is always stuck. And I think that's true in Orrisa, right? Right. And I don't think that in this case we're presented with a case where the trustees or the fiduciary or Smith Barney is trying to get off the hook in any way, shape, or form. It's simply where the forum – what forum should this be heard on based on a party's agreement? Now, I guess our cases say that even if you get arbitration, that may not be the end of the day, right? Well, in this particular – this is binding arbitration between – vis-à-vis Smith Barney and the Michael Orrisa Trust. It is binding arbitration with the limited grounds for vacatur set forth in the Federal Arbitration Act. Well, you know that interesting case we have that says, at least between beneficiaries and their trusts in the Orrisa area, arbitration is okay, but it may not be binding. I think the important distinction, though, is that, again, it's not a claim by the planned beneficiaries or participants. It's a claim by the trust itself. And it's being asserted by Mr. Comer, no doubt, as he is allowed to do under the statutes. But it is a claim on behalf of the trust. And I'd like to reserve my remaining time for rebuttal. Okay. Thank you. We'll hear from the other side. Good morning, Your Honors. Daniel Feinberg for Mr. Comer. In this case, the Court need look no further than Smith Barney's investment management agreement with the trustees to decide this appeal. It's really a question of contractual interpretation. The terms of the agreement clearly demonstrate that the contract is between the the clearly demonstrate that the contract does not apply to Mr. Comer or extend to his breach of fiduciary duty claims. This is especially true in light of our Well, but he's bringing the claim on behalf of the trust. Yes, he is bringing the claim on behalf of the plan. However, So how can he get more rights than the plan has? Well, If they are bound to arbitrate, how can the fact that he raises the claim on their behalf remove that restriction? Is there a separate contract? No, there is no separate contract. What you have here, really there's two points to be made here. First of all, if you look at the text of the arbitration provision, it says that the agreement is between the client and Smith Barney and applies to all claims between the client and Smith Barney. The client is simply defined as the underside. It's the plan. Now, if Smith Barney had wanted He's bringing here a claim between the plan and Smith Barney, right? No, he's not. The plan cannot be a plaintiff in this lawsuit. ERISA section 502A2 clearly says who can bring a claim for breach of fiduciary duty. It can be a plan participant or a beneficiary. It can be the fiduciary or the secretary of labor. The plan cannot bring this claim. Only a participant, beneficiary, secretary of labor or fiduciary can do so. But it's the plan's claim. No, it is not the plan's claim. And this Court has drawn a distinction between the owner of the claim and who gets the benefit in Landwehr v. Dupree. That's cited in our brief. And I would say that Mr. Comer owns the claim here because he is a participant. He's the one withstanding. We all agree that any monetary relief would flow to the plan. But there's a distinction between who gets the remedy and who owns the claim. If Smith Barney had really wanted this contract to go as far as they're saying here today, what they should have done is said that the arbitration provision applies to claims between or on behalf of the client in Smith Barney. Now, if the contract had been written ---- What difference would that make if your client didn't sign it? You'd say, well, they can say anything they want to. My client's not bound by it. He didn't sign it. Well, we agree, Your Honor, that there are limited exceptions to the general rule that non-signatories are not bound by contracts. Those exceptions are found in contract law and agency law. And Smith Barney has not pointed to a single recognized exception that applies to Mr. Comer's claim here today. And I would say that if they had made it clear somewhere in the contract that Mr. Comer was an intended third-party beneficiary, if they had made it clear in the contract that they wanted to have a very broad scope for this arbitration provision, we would have a difficult case today. Well, then it seems to me you'd be arguing that Waffle House says that you can't do it anyway because you can't bind these outside people by anything you do internally. Would you not? Waffle House has a broad statement that non-signatories are not bound in this kind of situation. However, I don't think that the court in Waffle House meant to overturn a precedent that was out there in a number of circuits, including the Ninth Circuit, stating that there's a couple of exceptions to this principle. You know, we are just dealing with a contract here. It is completely, shall we say, out of the usual course for a non-signatory to be bound by a contract. And so we only do that in very limited situations. If there's an alter ego, if there's an intended third-party beneficiary relationship, or a stopple. If someone has taken advantage of a contract, then you can't walk away from it. Now, I guess what you're saying is if the named trustees were suing Smith-Garney, then they would be bound by the arbitration agreement. Exactly. Is that right? Exactly. And if they sued now, if they cross-claimed, they would be bound by the arbitration agreement. But you're saying that anybody but the named trustees is not bound by it. Is that right? Secretary of Labor is not bound by it. Sure. Plan participants are not bound by it. Plan beneficiaries are not bound by it. I think it's very interesting, if you look at this arbitration provision, there's an expansive definition of who it covers on Smith-Garney's side. The arbitration provision specifically covers a wide range of parties related to Smith-Garney. It says, quote, unquote, it covers present or former officers, directors, or employees of Smith-Garney. Now, why doesn't the contract have a similarly expansive provision saying who's covered, who's related to the client? There are no parties related to the client set forth in this agreement who are covered by any provision. If you look at other parts of this agreement, you would see it's absurd to say it applies to Mr. Comer. The agreement requires the client to pay fees to Smith-Garney. Now, let's assume that the plans didn't pay the fees that they're required to under the contract. Would Smith-Garney then have a claim against Mr. Comer to pay the fees? I don't think so. The contract also says that either party can terminate the agreement upon written notice to the other party. Well, if Mr. Comer had sent a written notice to Smith-Garney saying I want to terminate the agreement, would that have been effective? Of course not. If Smith-Garney wanted to terminate the agreement, would they have sent the notice to Mr. Comer? No way. They would have sent that notice to the trustees. Since we're in agreement, I think Smith-Garney will agree to all of that. If we're in agreement that there's numerous provisions in this plan and, excuse me, in this contract that have nothing to do with Mr. Comer, why is it that this narrowly drafted arbitration provision applies to him? There's nothing within the text of that agreement that would give a reasonable person notice to think that it applied to Mr. Comer. In fact, you know, it goes beyond that because Mr. Comer never saw the agreement until after you filed a lawsuit. It seems to me that the Court should be very careful about saying the contracts that a person has never seen, has no notice of whatsoever, somehow curtail that person's rights, especially when you look at the ERISA statute. First off, in the ERISA statute, it says what's the purpose of this statute? Well, the congressional intent is to provide ready access to the Federal courts to plan participants. Mr. Comer is a plan participant. He's pursuing a breach of fiduciary duty claim that he owns himself. He's not a representative of the plans. This is not a class action where he's been designated as a representative. No one has taken a poll of the other 11 plan participants and elected him the representative. He's got his own rights here under the statute. Counsel, let me ask you a question. In trust law in general, and I'm not saying this follows it, trustees of a trust can seek investment advice if they like, but the deals they make with the investment counselors are personal to the trustees of the trust. The trustees can't get out from under it. They're stuck with it. If a beneficiary doesn't like what's done, the beneficiary sues the trustees, which has happened here. Here the contract runs to, I guess, three trustees of the plan, correct? Correct. So the trustees of the plan have come to Smith and Barney and asked for investment advice. Now, I hear the argument made that that was a deal with the plan. I think I hear you saying, well, it wasn't a deal with the plan at all. These three guys were just making a three were individually getting a deal with Smith Barney. Yet you do say that Smith Barney still became a fiduciary of the plan, and you're suing them in that capacity, correct? Correct. It seems like a slight disconnect. The statute may be causes, but there it is. Well, Your Honor, let me address that briefly. We are saying that the trustees are trustees of the plan, and they did enter into that contract in their capacity as trustees of the plan. However, the statute is different than the common law. Under common law, Mr. Comer couldn't be suing a third party like Smith Barney. What he'd have to do is complain to the trustees. Right. And if they didn't fulfill their obligations to sue Smith Barney, well, then he could sue the trustees. In Verity Corporation v. Howe, the Supreme Court talks about how this was not considered satisfactory. There were lots of problems with the common law of trust, and so Congress enacted And ERISA gave Mr. Comer himself individual rights to go after any fiduciary of the plan, not just the trustees. So he now has a statutory right under 502A2 to go after any fiduciary who breaches his or her fiduciary duty. And that's what he's doing here today. It's a right that can't be taken away lightly, given the statement of congressional intent in ERISA. I guess, you know, one question for Smith Barney is where does this stop? It would seem that if they're going to take away all of the rights under 502A2 from people who have standing under 502A2, what allows the Secretary of Labor to pursue that claim? And if the Secretary of Labor can't pursue that claim on behalf of the plan, then how do you justify that in light of EEOC v. Waffle House, where the Supreme Court says we don't care that an employee has signed away his right to go to court. The EEOC, which has separate standing, can go to court and seek victim-specific relief. Well, Mr. Comer also has separate standing, and he wants to have his day in court as well. Thank you. Thank you. Two points. The claim isn't being taken away from Mr. Comer. Smith Barney is simply seeking to enforce its contractual right to arbitration that it agreed with, the MICOR ERISA plan. Second, although ---- The problem itself is whether or not Mr. Comer is bringing his own claim or he's bringing a claim on behalf of the trust. And you and the Court of Appeals seem to disagree about that. And that was my next point. It is clear that he has the statutory right to bring this action. It is clear. He's exactly right. But it's also ñ it's equally clear ñ Does he have a right to bring it on his own? No, he does not. And that is ñ that's the corollary that's missing from Mr. Comer's argument. It is equally clear from Massachusetts Mutual Life v. Russell, U.S. Supreme Court case, that the claim must be brought on behalf of the plan. It's equally clear from several Ninth Circuit cases ñ they're in our brief. I won't run through them here ñ that it must be brought on behalf of the plan. Mr. Comer cannot seek relief on the ñ just for himself. He has to bring it on behalf of the plan, just as the trustees have to act on behalf of the plan. But the appellate counsel argues that, you know, he's the one who has the claim. Who gets the money in the end is a different question. It's his claim. And what you're now quibbling about is who gets the proceeds of the lawsuit. And so how do you answer that? I don't think it's just about the proceeds. It's about what the claim is ñ the claim that is being asserted and on whose behalf it's being asserted. It's not just a remedy matter. It's the claim, the nature of the claim. Feinberg says it's being asserted on behalf of Mr. Comer. It's his claim. The proceeds he doesn't get, but that often happens. You know, you do the work and somebody else does it. I think the case law ñ It's like a law firm, you know, associates and partners. I think the case law is clear that it's not just a matter of the remedy. It's that Mr. Comer must assert the claim on behalf of the plan. He is essentially stepping ñ he has the right to do this from the statute, but he is essentially stepping into the shoes of the fiduciary. It's his claim, but he has to bring it under the plan, so therefore for the plan. And I think it was done by the Congress to remedy the deficiency that Mr. Feinberg identified in just common law trust. They could only sue the trustees. Congress wanted to give the participants in an ERISA plan more power to bring the claim, but they still wanted to limit it to bring it on behalf of the ERISA plan. With that, I submit. Thank you. Okay. The case is now able to stand for a minute.
judges: Kozinski, Fernandez, Hatter